UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KATHRYN M. GRAY, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 16-cv-09719 |
| v. | ) ) | Judge Edmond E. Chang |
| ARROW ELECTRONICS, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kathryn Gray worked as a sales representative for Defendant Arrow Electronics. Gray was let go in 2015 and, shortly thereafter, brought claims against Arrow for age and gender discrimination under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act, and the Illinois Human Rights Act. *See* 29 U.S.C. § 621 *et seq.*; 42 U.S.C. § 2000e *et seq.*; 775 ILCS 5/1-101 *et seq.*; R. 1, Compl. ¶¶ 27-50.[1] She also brought a claim for breach of contract, alleging that Arrow breached its own employee handbook and code of conduct when it fired her based on her age and gender. Compl. ¶¶ 51-61. Arrow now moves for summary judgment on all claims. R. 43, Def. Br. For the reasons stated below, the motion is granted in its entirety.

---

[1]This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367. Citations to the docket are indicated by "R." followed by the docket entry.

# I. Background

In deciding Arrow's motion for summary judgment, the Court views the evidence in the light most favorable to the non-movant, Gray. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Kathryn Gray began working as a sales representative at Arrow Electronics in 1995. R. 62, Exh. 1, Gray Dep. at 25:14-17. Before that, Gray worked for six years as an outside sales representative at Anthem Electronics, which was bought out by Arrow in 1995. *Id.* at 23:18-25:18, 26:4-16. Arrow describes itself as a "global provider of products, services, and solutions to industrial and commercial users of electronic components and enterprise computing solutions." R. 45, DSOF ¶ 2. The company is broken out into two business groups: (1) the Alliance group, which serves strategic customers with larger accounts; and (2) the Arrow Electronics Components (AEC) group, which serves the remainder of Arrow's customers. Gray Dep. at 26:17-23, 32:3-5; R. 45.6, McShan Dep. at 30:19-23.

Gray's primary account at Arrow was Motorola, a long-time customer which was initially serviced through the Alliance group. Gray Dep. at 26:24-27:3, 29:13-30:20, 32:10-15, 33:12-16. Gray worked as an outside sales representative in Alliance until around 2012, when she began to split her time between Alliance and AEC. Gray Dep. at 32:16-33:2. During this period, Gray serviced several non-Motorola, smaller accounts through AEC: specifically, customers Ubiquity, Cambium, Continental, and a division of Honeywell. Gray Dep. at 37:12-39:13. Gray's direct manager at this time was William Wray, an Arrow Customer Project Manager in the Alliance group. Gray Dep. at 35:4-12, 45:23-46:4; R 62, Exh. 3, Wray Dep. at 19:22-20:2, 24:2-8, 31:15-32:4.

During her tenure at Arrow, Gray received positive feedback and was considered to be someone that met and sometimes exceeded expectations. Wray Dep. at 41:3-44:8; Gray Dep. at 72:17-20.

Arrow asserts that, by 2013, Motorola's business with the company had significantly declined. Wray Dep. at 31:11-14, 33:18-24, 45:5-11. At this time, Arrow transitioned Gray's other accounts to different sales representatives in AEC who were new to the group following Arrow's acquisition of another company called Nu Horizon. Gray Dep. at 36:14-39:13. As a result, by December 2013, Gray's accounts were reduced to only Motorola and Arris (a Motorola spin off) and she was asked to work part-time. Gray Dep. at 36:2-11, 37:12-39:13, 46:5-14, 108:20-109:2; Wray Dep. at 42:9-22, 43:17-24, 44:9-24. Gray was 65 years old at that time. Gray Dep. at 7:17-20. During her deposition, Gray admitted that Wray offered her the part time position in order to save her job at Arrow. Gray Dep. at 137:9-11.

Almost a year later, beginning in November 2014, Arrow hired three male employees in the AEC group. Matthew Jaske was hired as an account development representative (the parties label that job title as "ADR") on November 3, 2014; Jason Rogers was hired as an outside sales representative on December 15, 2014; and Brian Rumpf was hired as an ADR on January 5, 2015. R. 45.4, Jaske Dep. a 16:5-12; R. 45.13, Farnsworth Dec. ¶ 7; R. 45.8, Rumpf Dep at 11:24-12:17. [2] All three of these employees were male and significantly younger than Gray: Jaske was 31, Rogers was

---

[2] Rumpf was originally hired as a summer intern/apprentice on June 9, 2014. He was first hired as a full-time employee on January 5, 2015, while he was still an undergraduate student at the University of Wisconsin. Farnsworth Dec. ¶7(c); Rumpf Dep. at 9:4-10, 9:21-10:9; 10:16-12:11.

37 and Rumpf was 23. Jaske Dep. at 16:10-12; R. 45.7, Rogers Dep. at 7:17-21; Rumpf Dep. at 18:23-19:1. Michael Emme, a Field Sales Representative at AEC, and David Butler, AEC's General Manager, were in charge of hiring all three. R. 62, Exh. 2, Emme Dep at 19:4-21:24, 24:11-26:24-; Wray Dep. at 88:1-17; *see also* R. 63, Pl. Resp. to DSOF ¶ 14.

By the end of 2014, Motorola's business with Arrow had changed to such a degree that the company decided to shift the account from Alliance to AEC. Wray Dep. at 33:12-24; McShan Dep. at 63:22-64:13, 83:11-85:24; Gray Dep. at 32:10-15. The parties dispute what happened to Gray's position following the shift. Arrow asserts that Gray's position was eliminated because there were resources in place within AEC to handle the Motorola account. McShan Dep. at 63:22-64:13, 91:14-92:5; R. 62, Troisi Dep. at 79:20-86:21, 132:4-133:2; Wray Dep. at 45:21-47:2. Gray, on the other hand, asserts that Arrow transferred all her responsibilities to Rogers. Gray Dep. at 20:4-19, 109:3-21; *see also* Emme Dep. at 74:6-20. In any event, Arrow terminated Gray's employment on January 23, 2015; she was 66 at the time. Gray Dep. at 7:17-20, 58:17-59:8. The decision to let Gray go was made by Wray; Director of Strategic Sales, Frank McShan; and Human Resources Director, Eileen Troisi. McShan Dep. at 85:14-90:1; Troisi Dep. at 127:2-129:24; Wray Dep. at 46:1-47:2. Arrow concedes that, by March 2015, Rogers was handling both the Motorola and Arris accounts. Def. Br. at 8.

The parties also dispute whether there was an available position for Gray within Arrow when she was fired. Arrow asserts that it tried to find a new position

4

for Gray before she was let go, but that, at the time, there were no openings in the company for which she was qualified . McShan Dep. at 85:14-86:23, 88:17-90:1, 104:14-24; Wray Dep. at 52:7-53:7. Arrow also argues that Michael Emme—a Field Sales Representative in AEC and the employee in charge of hiring for that group—believed that Gray would not be motivated to perform in an ADR role because it came with a significantly lower salary ($36,000 plus commissions) than Gray's salary as an outside sales representative ($60,000 plus commissions), while also requiring her to work full time. Emme Dep. at 57:2-58:6, 86:6-87:10; Gray Dep 180:12-182:2. In response, Gray contends that there were open positions within AEC that should have been offered to her and points out that AEC continued to grow and hire additional ADRs following her firing. Pl's Resp. to DSOF, ¶ 32; R. 63, PSOF, ¶ 83; *see also* Emme Dep. at 20:16-22:6. Some of the ADRs hired around the time Gray was fired were promoted to outside sales representative within a year of being hired. Jaske Dep. at 16:1-23; Emme Dep. at 44:4-18.

In October 2016, Gray filed this lawsuit, alleging that Arrow violated the Age Discrimination in Employment Act, Title VII of the Civil Rights Act, and the Illinois Human Rights Act. *See* Compl. ¶¶ 27-50. She also brought a breach of contract claim alleging that Arrow violated its own employee handbook and code of conduct. *Id.* at ¶¶ 51-61. Arrow now seeks summary judgment on all of Gray's claims. R. 43, Def's Br.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

5

matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must "view the facts and draw reasonable inferences in the light most favorable to the" non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (cleaned up).[3] The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (cleaned up), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

#### A. Age and Sex Discrimination Claims

Gray's primary claim is that Arrow discriminated against her in violation of the ADEA, the IHRA, and Title VII when it fired her and gave her accounts to younger, male employees. R. 62, Pl. Br. at 4-6. The Seventh Circuit applies the same

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

6

overall analysis to claims under Title VII, the ADEA, and the IHRA. *See David v. Bd. of Tr. of Cmty. Coll. Dist. No., 508*, 846 F.3d 216, 225 (7th Cir. 2017); *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016). A plaintiff seeking to recover for disparate treatment under these statutes must prove at trial, by a preponderance of the evidence, that their age or sex caused the challenged adverse employment action. *Carson v. Lake Cty., Indiana*, 865 F. 3d 526, 532 (7th Cir. 2017).

In *McDonnell Douglas Corp. v. Green.* 411 U.S. 792, 802 (1973), the Supreme Court set forth a now well-known way to evaluate employment-discrimination claims. This method "is a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *David*, 846 F.3d at 224. Under this approach, Gray must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If she does this, then the burden shifts to Arrow to articulate a legitimate, nondiscriminatory reason for Gray's firing. *Id.*; *see also Carson*, 865 F.3d at 533. If Arrow succeeds in this endeavor, then the burden shifts back to Gray to show that Arrow's stated reason for her firing "was in fact pretext." *McDonnell*, 411 U.S. at 804.

### 1. *Prima Facie* Case

To establish a *prima facie* case of discrimination, Gray must show that (1) she is a member of a protected class; (2) she met the employer's legitimate expectations; (3) she suffered a materially adverse employment action; and (4) her duties were absorbed by an employee who was male or substantially younger. *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006). Here—a single-discharge case where duties were absorbed by another employee—Gray does not need to show that

7

similarly situated employees were treated better than she was, because discrimination can be inferred when a plaintiff is constructively "replaced" by others outside of the protected class. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693 (7th Cir. 2000). This is sometimes referred to as a "mini-RIF" analysis. *Id*.

Arrow concedes that Gray can show the first three elements in the *prima facie* analysis but argues that she "cannot establish the fourth element: that her duties were absorbed by employees who were male, or who were substantially younger." Def. Br. at 8. Arrow instead asserts that Gray's position was eliminated entirely and that "Rogers' assumption of responsibility for what was left of Gray's accounts over a month after she was terminated is not sufficient to establish the fourth element of the prima facie case." *Id*.

Based on the record evidence, that argument is not persuasive. Arrow concedes that, just over one month after Gray's firing, Rogers was already covering both of Gray's accounts—Motorola and Arris. Def. Br. at 8; *see also* Rogers Dep. at 77:3-20. Arrow contends that the time lapse between Gray's firing on January 23, 2015 and Rogers assumption of the accounts in March 2015 means that Gray's duties were not transferred to him. That contention falls far short of viewing the evidence in the light most favorable to Gray. Wray admitted that the account was first given to David Butler, the general manager of AEC, who was responsible for assigning the account to a sales representative in his department. Wray Dep. at 88:1-14. After receiving the account, Butler assigned it to the much younger, male Rogers. *Id*. at 81:2-21, 88:15-17. Nothing about this sequence of events undermines Gray's argument that her

8

duties were transitioned to someone outside of her protected class. In other words—whether the period between the end of January 2015 and March 2015 was a transition period or simply lag time—Gray has enough evidence to show that her duties were transitioned to a younger, male employee. And she is thus able to make out a *prima facie* case of discrimination.

### 2. Nondiscriminatory Reason for the Termination

Once an employee establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for firing the employee. *David,* 846 F.3d at 225. Arrow has done so here. According to the company, Gray's primary account—Motorola—had significantly reduced its business with Arrow before Gray's firing. Wray Dep. at 31:11-14, 33:18-24, 45:5-11. Due to this decline, Arrow shifted Motorola to a different division within the company because its place and importance within the Arrow portfolio had changed. Wray Dep. at 33:12-24; McShan Dep. at 63:22-64:13, 83:11-85:24; Gray Dep. at 32:10-15. This is sufficient to show that there was a legitimate, nondiscriminatory reason for terminating Gray's employment—a substantial decline in business from Gray's primary account. *See Hemsworth v. Quotesmith. Com, Inc.*, 476 F. 3d 487, 492 (7th Cir. 2007) (an employer's financial losses is a legitimate, non-discriminatory reason), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006) (poor financial performance of the employer and "economic softening in the marketplace" are legitimate, non-discriminatory reasons); *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F. 3d 391, 398-401 (7th Cir. 1997) (a need to reduce operating costs and a

determination that the plaintiff's job is not essential to the company's continued operations is a legitimate, non-discriminatory reason), *overruled on other grounds by Ortiz*, 834 F.3d at 765; *Hill v. Burrell Communications Group, Inc.*, 67 F. 3d 665, 669 (7th Cir. 1995) (downsizing is a legitimate, non-discriminatory reason), *overruled on other grounds by Ortiz*, 834 F.3d at 765.

### 3. Pretext

The final step in the burden-shifting analysis puts the ball back in Gray's court: she must have enough evidence from which a reasonable jury could find that Arrow's proffered reason for her firing is a pretext for discrimination. *Clay v. Holy Cross Hospital*, 253 F.3d 1000, 1005 (7th Cir. 2001). To show pretext, Gray "must demonstrate that [the] proffered reason is a lie or completely lacks a factual basis" she cannot merely argue that the presented reasons were "mistaken, ill considered, or foolish." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000) (cleaned up). In other words, it is Gray's burden to show that Arrow's proffered explanation is "a dishonest explanation, a lie rather than an oddity or an error." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (cleaned up).

As an initial matter, Gray's effort to show pretext is undermined by her admission that Motorola's business with Arrow was indeed changing before and during the time of her discharge. Gray Dep. at 32:10-15, 46:15-55:5, 187:6-10. It is true that Gray did not directly state that Motorola's business was *declining* during the relevant period. At her deposition, she instead repeatedly stated that the business was "changing." Gray Dep. at 32:10-15, 46:24-47:4, 48:16-18, 50:20-51:22, 53:7-55:5.

10

But she does not affirmatively offer evidence, beyond the cryptic description that *something* about Motorola's business was "changing," to rebut the testimony offered by Arrow's evidence that, even by 2013, Motorola's business with the company had significantly declined, Wray Dep. at 31:11-14, 33:18-24, 45:5-11, and indeed that Motorola was moved from the large-account Alliance group to AEC, Wray Dep. at 33:12-24; McShan Dep. at 63:22-64:13, 83:11-85:24.

What's more, even when viewing the facts in a light most favorable to her, Gray has not presented enough evidence to show pretext. Gray points out that she was an exemplary employee, which indeed is supported by the record. Wray Dep. at 41:3-44:8; Gray Dep. at 72:17-20. But Arrow does not argue that it fired Gray for poor performance, so this point fails to move the needle in Gray's direction.

Gray also argues that there were numerous job openings within Arrow before she was fired, and Arrow admitted as much in its brief. Pl's Resp. at 8; *see also* Def. Br. at 4 ("The fact that Gray never applied for an ADR position before or after her employment terminated, *despite numerous opening*s, suggests that Emme's assessment was correct.") (emphasis added). Critically, though, Arrow was not obligated to offer Gray one of those positions. *Taylor v. Canteen Corp.*, 69 F.3d 773, 780 (7th Cir. 1995) ("[A]n employer incurs no duty to transfer an employee to another position when it reduces its workforce for economic reasons."). And Emme explained why the company did not consider Gray for the ADR positions: "I don't think she would be motivated for the salary that we would have to give to an ADR to perform an ADR's position." Emme Dep. at 86:14-16. This explanation is supported by the

11

record, given the disparity between the ADR salary—$36,000 plus commission for a full-time position—and Gray's salary as an outside sales rep—$60,000 plus commission for a part-time position.[4] And it is undisputed that Arrow made at least some inquiries about open positions within the company for Gray before she was let go. Pl.'s Resp. to DSOF ¶ 27. Frank McShan, Director of Strategic Sales and Wray's boss, tried to find a position for Gray in two separate divisions, including AEC, while Wray inquired with a third. McShan Dep. at 85:14-86:23, 88:17-90:1, Wray Dep. at 52:7-53:7.

Gray, however, asserts that there were open positions within the company that she was not offered. But her evidence in support of this assertion is not enough to get to a jury, even when viewed in her favor. She first points to Arrow's statement in its brief that there were available ADR positions in AEC. Pl.'s Resp. to DSOF ¶¶ 27. As discussed earlier, however, Emme believed that Gray was overqualified for the ADR positions, which the Seventh Circuit has explained is a legitimate, non-discriminatory reason not to hire someone. *See Sembos v. Philips Components*, 376 F. 3d 696, 701 (7th Cir. 2004).

Gray next relies on Emme's testimony that AEC grew from 10 positions to 13 positions between 2011 and 2017. Emme Dep. at 21:6-22:6. But this testimony implies

---

[4]Arrow also argues that Emme's assessment is bolstered by Gray's failure to apply for any of the open positions at Arrow before or after she was fired. Def. Brief at 4. The Seventh Circuit has explained that a plaintiff "should not be penalized for failing to apply for a specific job as long as the record suggests, as a reasonable inference, that he would have applied for specific positions had he known of their availability." *Taylor*, 69 F.3d at 781. Gray provided testimony at her deposition that strongly implies that she would have applied for an ADR position at AEC had she known any were available. Gray Dep. at 44:19-45:14, 68:10-15. This argument, thus, neither helps nor hurts Arrow's cause.

12

that the additional employees hired in AEC between 2011 and 2017 were all ADRs. Emme Dep. at 21:19-22:6 (referring to new positions as "account development reps"). Although it is true that some ADRs hired in AEC were promoted to outside sales representatives after Gray was fired, Emme Dep. at 44:4-18; Jaske Dep. at 16:1-23, this does not support Gray's claim of pretext either. Emme testified that it was common practice to internally promote ADRs to sales representatives within 12-14 months if they were performing well (and Gray offers no evidence to the contrary). Emme Dep. at 44:15-18. That is exactly what happened here. AEC did not hire anyone from the outside to fill newly created outside sales rep positions after Gray's employment was terminated; it promoted ADRs already on their payroll in the normal course of business. This, without more, does not create a triable question of fact. *See Smith v. Cook Cty.,* 74 F.3d 829, 832–33 (7th Cir. 1996) ("[T]he fact that [positions] became available shortly after the RIF cannot support an inference of discriminatory motivation for his termination… The restriction of job availability to current employees is entirely consistent with an employer's having undergone a recent RIF.").

The hire that comes closest to raising an inference of pretext is Rogers. Rogers—a male employee substantially younger than Gray—was hired just one month before Gray was let go and took over her last two accounts, Motorola and Arris. Farnsworth Dec. ¶ 7(a); Rogers Dep. at 7:17-21; Emme Dep. at 74:6-20; Def. Br. at 8. Gray asserts that this "demonstrates that there was a need for outside sale[s] representatives within Arrow at or around the time [she] was terminated." Pl. Brief

at 8. Although not explicitly stated, it appears Gray is attempting to show pretext by comparing herself to a similarly situated younger, male employee. *See Essex v. United Parcel Service*, 111 F.3d 1304, 1311 (7th Cir. 1997) ("A plaintiff may establish pretext by offering evidence that other similarly situated employees were treated more favorably.").

Although it might be true that Arrow had an opening for an outside sales representative in late 2014, the timing of Rogers' hiring in comparison to Gray's firing is not enough to create a question of fact, because the evidence shows the two were not similarly situated. First, it is undisputed that Rogers had an engineering degree and Gray did not. Pl. Resp. to DSOF ¶ 16. Arrow asserts that this was one of the primary reasons it hired Rogers, Emme Dep. at 34:9-18, 96:13-97:6, and Gray does not offer evidence to rebut that assertion (such as evidence that engineering degrees are not an advantageous qualification for ADRs). And, more importantly, Rogers was hired into a department separate and apart from the department where Gray was working, and—this is crucial—by decision makers who did *not* make the decision to terminate Gray's employment. McShan Dep. at 85:14-90:1; Troisi Dep. at 127:2-129:20; Wray Dep. at 46:1-47:2, 88:1-17; Emme Dep. 27:21-28:20. Under Seventh Circuit precedent, a demonstration of substantial similarity generally requires a showing that a common decision-maker offered Rogers a position for which Gray was qualified, and that the same decision-maker also knew about Gray's availability but refused to offer the job to her. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000), *overruled on other grounds by Ortiz*, 834 F.3d at 765. The difference

in decision-makers undermines the inference that Gray is trying to draw from Rogers's hiring. To be sure, as *Ortiz* teaches, courts must avoid strait-jacketing every employment-discrimination case into the *prima facie* framework. 834 F.3d at 763-64. There might very well be cases in which even different decision-makers do not fatally undermine the inference of discrimination, such as if there is evidence of adverse communications about a plaintiff made by the firing decision-maker to the hiring decision-maker. But Gray has offered nothing to link the decision-makers in a way to link the firing and hiring decision-makers.

Gray also cites three cases in support of the pretext argument. First, she relies on *Stumph v. Thomas & Skinner, Inc.* 770 F.2d 93 (7th Cir. 1985). Pl.'s Resp. at 10-11. In that case, the employer shifted some of the plaintiff's duties to a younger employee and then later experienced a financial downturn. *Id.* at 94. The employer then terminated the plaintiff's employment altogether. *Id.* That was enough for a *prima facie* case. *Id.* at 96-97. Gray argues that her situation is analogous because she was "effectively demoted approximately one year prior to termination," and her remaining duties were later transferred to Rogers once she was discharged. Pl. Br. at 11. But Gray's reading of the case ignores the key evidence on which the Seventh Circuit based its decision: discriminatory statements by the employer's president and chairman that he wanted to eliminate the company's older employees, as well as statements of co-employees in plaintiff's age group that the employer decreased their job duties and forced them into early retirement. *Stumph*, 770 F.2d at 97. Gray has not presented evidence of statements that are even in the same ballpark as those at

15

issue in *Stumph*. The best Gray can muster is deposition testimony from Emme in which—in response to leading questions—he describes Jaske as "ambitious," "aggressive," "energetic," and "young in nature." Emme Dep. at 35:12-36:17. But these statements are manufactured after-the-fact, in response to leading deposition questions. In other words, Emme's testimony is a long way from stating, or even insinuating, that Arrow was biased against employees over the age of 40. And even if Emme's statements implied some sort of discriminatory intent, he had no part in Gray's firing, so his statements and opinions cannot create an inference of pretext. *See Chiaramonte*, 129 F.3d at 402 (statement from employee who had no control over termination decision did not create triable question of fact) *overruled on other grounds by Ortiz*, 834 F.3d at 765.[5]

Gray also argues that *Ormiston v. Penton Corp.*, 1995 WL 729296 (N.D. Ill. Dec. 6, 1995) supports her argument that she has shown enough for a reasonable juror to find pretext. Pl.'s Br. at 11. But the employer in that case claimed it terminated the plaintiff's employment because of poor performance, rather than a reduction in work force. *Ormiston*, 1995 WL 729296 at *1. The plaintiff rebutted the employer's argument by presenting evidence that (1) he had complied with the terms of his probationary period, even though they were unreasonable; and (2) a significant portion of his territory was transferred to a younger employee before the termination

---

[5]Gray also testified in her deposition that "the sales team joked that if you're getting older, be careful." Gray Dep. at 120:5-7. Although disturbing, this is not admissible evidence, because there is no foundation for what the sales team said. *Ormiston*, 1995 WL 729296 at *6 ("a party cannot fight a motion for summary judgment with affidavits based on rumor or conjecture").

16

of his employment. *Id.* at *6-7. Although Gray alleges that her duties were transferred to a younger employee, the evidence she has presented does not directly undercut Arrow's proffered reason for her firing—a reduction in workforce following a decline in Motorola's business—in the same way the plaintiff's evidence did in *Ormiston*. The same holds true for *Thorn v. Sundstrand Aero. Corp.*, 207 F.3d 383 (7th Cir. 2000). The plaintiff there was fired for "low productivity" and presented evidence that his supervisor had altered his performance review and personnel records right before his firing. *Id.* at 387. The Seventh Circuit held that this created a triable issue of fact on the question of pretext. *Id.* at 388. No such evidence exists here.

Finally, Gray argues that Arrow's discriminatory intent is evidenced by its firings of three other employees over the age of 40—Jim McTeague, Laurie Mittle,[6] and Eileen Troisi. Pl. Br. at 9-10; Emme Dep. at 77:2-10. McTeague was an outside sales representative in AEC who was let go in the end of 2015 for an alleged lack of performance. Emme Dep. at 44:22-45:17. Arrow dispersed McTeague's accounts amongst the entire AEC team, including Rumpf, following his discharge. Emme Dep. at 45:21-24. It is not clear from the record what position Mittle held, but it is undisputed that she worked under Emme in AEC and was fired. Def. Resp. to PSOF ¶¶ 79, 80. Troisi was Arrow's human resources director. Troisi Dep at 20:3-11. She was laid off in March 2015 when she was around 50 years old. Troisi Dep. at 24:23-

---

[6]Mittle's name is spelled several different ways throughout the briefing. The Court will use the spelling "Lori Mittle," even though the correct spelling of her name remains disputed.

17

26:2. It is true that evidence of a defendant's "behavior toward or comments directed at other employees in the [same] protected group" as the plaintiff is relevant circumstantial evidence. *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529 (7th Cir. 2008) (cleaned up). But with regard to the decision-makers on those firings, Gray does *not* allege that the decision to fire any of these employees was made by the same group of people who decided to let her go. When decisions are made by different decision-makers, the relevance of the evidence depends on "a variety of factors, including 'how closely related the evidence is to the plaintiff's circumstances and theory of the case.'" *Id.* (*citing Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008)). Indeed, to survive summary judgment, Gray would have to provide details of McTeague's, Mittle's, and Troisi's firings that would allow a reasonable factfinder to infer a discriminatory reason for her termination. Her underdeveloped argument about these three employees does not do so. As already discussed, Gray and these employees were terminated by different decision-makers over the course of one year, seriously undermining any argument that they were in some way connected. Moreover, Gray provides no concrete evidence about the circumstances of these other firings, such as affidavits or testimony from McTeague or Mittle. Although Gray testified that she heard from both McTeague and Mittle about the details of their terminations, Gray Dep at 116:15-117:3, this evidence would be excluded at trial as hearsay and, thus, cannot be considered here. *See Cairel v. Alderden,* 821 F.3d 823, 830 (7th Cir. 2016) ("If the evidence is inadmissible hearsay, the courts may not consider it."). The evidence Gray has put forth of these three other layoffs is not

18

enough to create a reasonable inference of pretext or to save Gray's claim from summary judgment. *See Johnson-Carter v. B.D.O. Seidman, LLP,* 169 F. Supp. 2d 924, 941–42 (N.D. Ill. 2001) (holding that the plaintiff could not show that the defendant's reason for terminating her was pretext "simply by pointing out that another African-American and two Hispanics were terminated on the same day").

Accordingly, because Arrow articulated a legitimate, non-discriminatory reason for firing Gray, and Gray was unable to counter with evidence that would allow a reasonable juror to find that Arrow's proffered justification was pretextual, Arrow's motion for summary judgment is granted as to discrimination claims.

### B. Breach of Contract

Gray's remaining claim is for breach of contract. She alleges that Arrow breached its own employee handbook and code of conduct when it fired her based on her age and sex. Compl. ¶¶ 51-61. Gray does not cite to or quote from either the employee handbook or code of conduct anywhere in her briefing. Without it, it is next to impossible to determine what rights, if any, she has based on the documents.

Her claim fails in any event, because an employer's policy prohibiting certain types of discrimination—as Gray alleges the handbook and code of conduct did, Compl. ¶ 54—does not create a contract between itself and its employees; it simply restates a pre-existing legal duty, unsupported by any additional consideration. *See Brand v. Comcast Corp.*, 2012 WL 5845639, at *3 (N.D. Ill. Nov. 19, 2012); *Sample v. Aldi Inc.*, 1994 WL 48780, at *12 (N.D. Ill. Feb. 15, 1994). It does not matter, then, whether Gray relied on promises made in the handbook or code of conduct. *See* Def.

Br. at 15. And, in any event, as discussed above, there is insufficient evidence demonstrating that Gray's firing was based on her age or sex. Arrow's motion for summary judgment is likewise granted as to Gray's claim for breach of contract.

### IV. Conclusion

Arrow's motion for summary judgment is granted in its entirety and the case is dismissed with prejudice. The status hearing of April 4, 2019 is vacated, and final judgment will be entered on the docket separately.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 28, 2019